**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

YURY GOKHBERG,

Plaintiff,

v.

BH BRAZIL VENTURE LLC, a Delaware limited liability company; LIAT TOLEDANO and RAINER VIETE; WOLF CO. REAL ESTATE BROKERAGE & INVESTMENTS LLC, a Florida limited liability company; and THE LAW OFFICE OF ILANA KALICHMAN-ARTZY, P.A., a Florida professional association,

Defendants.

Case No. 0:25-cv-61739-PAB

**AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

FILED BY [signature] D.C.
JUL 20 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

Plaintiff Yury Gokhberg ("Plaintiff"), proceeding pro se, files this Amended Complaint pursuant to the Court's June 29, 2026 Order [DE 48] and alleges as follows:

## NATURE OF THE ACTION AND THE COURT'S LEAVE TO AMEND

1. This case arises from the marketing, sale, brokerage, and closing of commercial condominium Unit CU-5 at 4111 South Ocean Drive, Hollywood, Florida 33019 (the "Property"), which was presented to Plaintiff as suitable and legally available for office use.

2. New York Media Holdings Corp. ("NYMH") took title to the Property on September 2, 2021. Plaintiff does not seek in this Amended Complaint to recover injuries belonging to NYMH merely because he is an owner, officer, or representative of NYMH.

3. The Court dismissed the original Complaint without prejudice because it predominantly sought recovery for injuries to the corporation, including injuries arising from the corporation's ownership and use of the Property. The Court expressly granted Plaintiff leave to amend, however, if he had a good-faith basis to allege a personal injury independent of harm to the corporation. [DE 48 at 4-5].

4. This Amended Complaint is limited to Plaintiff's own direct reliance and personal injuries. Those injuries include Plaintiff's execution of an unconditional personal guaranty before he discovered the alleged use issue; the present enforcement of that Guaranty against him in a pending third-party action; actual impairment of his personal credit or borrowing capacity and increased financing costs; and actual out-of-pocket municipal-record, investigation, professional, consultant, filing, copying, mailing, travel, defense, and mitigation expenses personally paid by him.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is a citizen of New York, no Defendant is a citizen of New York, and Plaintiff alleges in good faith that the amount the lenders seek to impose on him personally under the Guaranty exceeds $75,000, exclusive of interest and costs. Plaintiff also seeks his actual direct out-of-pocket damages and punitive damages where legally recoverable.

6. Plaintiff incorporates by reference the complete entity-membership and citizenship facts stated in his Jurisdictional Supplement filed in response to the Court's March 23, 2026 Order [DE 38; DE 39]. As stated in that supplement, every member of BH Brazil Venture LLC and every member of Wolf Co. Real Estate Brokerage & Investments LLC is a citizen of a state other than New York. The Law Office of Ilana Kalichman-Artzy, P.A. is organized in Florida and has its principal place of business in Florida. Liat Toledano and Rainer Viete are citizens of Florida.

7. Venue is proper under 28 U.S.C. § 1391 because the Property is in Broward County, Florida, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

8. Plaintiff Yury Gokhberg is a natural person domiciled in New York. He was the person to whom the office-use marketing and due-diligence services were directed, the intended office user and transaction decision-maker, and later a personal guarantor of debt secured by the Property.

9. Defendant BH Brazil Venture LLC ("BH Brazil" or "Seller") is a Delaware limited liability company that conveyed the Property to NYMH.

10. Defendant Liat Toledano is a Florida citizen who acted for BH Brazil in the transaction, personally executed the Seller's warranty deed and title-related affidavit, and, on information and belief, personally participated in or authorized the Seller-side representations, disclosures, and omissions concerning the Property's use.

11. Defendant Rainer Viete is a Florida citizen identified in the Seller's closing records as a member of BH Brazil and, on information and belief, personally participated in or authorized the Seller-side representations, disclosures, and omissions concerning the Property's use. These allegations are made on information and belief because the Seller's internal communications and allocation of responsibility are within Defendants' possession.

12. Defendant Wolf Co. Real Estate Brokerage & Investments LLC ("Wolf Co.") is a Florida limited liability company that acted as the listing and showing brokerage for the Property.

13. Defendant The Law Office of Ilana Kalichman-Artzy, P.A. ("TLO") is a Florida professional association that undertook to provide Plaintiff with legal and due-diligence services concerning CU-5.

## FACTUAL ALLEGATIONS

14. During the pre-contract and pre-closing period in 2021, the Property was marketed and shown to Plaintiff as commercial office space. The office-use representation was conveyed through the listing and showing process, communications arranging and conducting the showings, the physical presentation of the space, and the transaction's repeated office-use framing.

15. Plaintiff communicated that the intended purpose of the transaction was office occupancy and operations. The ability to use CU-5 lawfully as an office was material to Plaintiff personally, not merely to the entity selected to hold title.

16. Wolf Co., through the agent or agents who listed and showed CU-5, represented or conveyed to Plaintiff during the 2021 listing and showing process that CU-5 was suitable and available for office use. No Wolf Co. representative disclosed to Plaintiff that the City-approved plan identified the specific space as bicycle storage or that additional City Commission approval might be required before office occupancy.

17. BH Brazil, through the persons controlling and conducting the sale, proceeded with the transaction while knowing that Plaintiff was relying on the office-use premise. Liat Toledano personally executed the Seller's deed and closing affidavit. On information and belief, Toledano and Viete approved or participated in the Seller's decision not to disclose the specific approved-plan designation or any risk that office use required further municipal approval.

18. The alleged omission was material because general commercial zoning language did not necessarily answer whether the City Commission had approved office use for this specific space within a Planned Development. Plaintiff alleges that Defendants knew the difference between general land-use classifications and the approved use of CU-5 itself.

19. Plaintiff personally retained TLO to investigate the transaction and protect his intended office use. TLO's June 24, 2021 invoice was addressed to "Yury Gokhberg" and described review of condominium documents, rules, regulations, and due-diligence material for CU-5. Plaintiff relies on the invoice as evidence that TLO undertook duties directly to him.

20. TLO therefore owed professional and fiduciary duties directly to Plaintiff.

21. TLO did not obtain or advise Plaintiff to obtain a municipal use, zoning, certificate-of-use, or site-plan verification directed to the proposed office use. TLO did not advise Plaintiff that a Planned Development approval for the specific space could differ from the broader property's general land-use classification.

22. Had TLO advised Plaintiff that the specific approved use needed separate municipal confirmation, Plaintiff would have required that confirmation before proceeding, would have declined to undertake any personal obligation tied to the Property, or would have required the use issue to be resolved before assuming such an obligation.

23. NYMH took title to the Property on September 2, 2021 for a stated price of $825,000. Plaintiff does not claim that he personally acquired title.

24. After closing, Plaintiff continued to believe that CU-5 could lawfully be used as represented. The transaction documents, marketing, showings, and due-diligence process all reinforced the office-use understanding, and no Defendant corrected that understanding or disclosed the alleged approved-plan issue before Plaintiff undertook the personal obligation described below.

25. On March 7, 2024, before discovering the alleged use problem, Plaintiff signed an Unconditional Continuing Guaranty of Payment and Performance relating to a $600,000 mortgage loan secured by the Property (the "Guaranty"). The Guaranty imposed obligations on Plaintiff

personally, separate from NYMH's obligations and separate from any loss in the value of NYMH's property or Plaintiff's shares.

26. Plaintiff executed the Guaranty in actual reliance on the continuing understanding, created by the 2021 marketing, sale, and due-diligence process, that CU-5 was lawfully usable as commercial office space. Plaintiff had no actual notice of the alleged bicycle-storage designation or the need for further City Commission approval when he signed the Guaranty. He would not have signed it had he known the City's later-stated position concerning the specific space.

27. A personal guaranty or similar financing obligation was a foreseeable consequence of acquiring, retaining, refinancing, or attempting to preserve a commercial property. Defendants' alleged conduct placed Plaintiff in a position in which he personally undertook liability that he would otherwise have refused or conditioned on resolution of the permitted-use issue.

28. Plaintiff first learned of the alleged use problem through the City of Hollywood in June 2025. In a June 18, 2025 written communication, Cameron Palmer, the City's Principal Planner/Supervisor, advised Plaintiff that CU-5 was in a Planned Development district; that uses must be granted by the City Commission; that the April 16, 2014 approved plan described the area as bicycle storage; that office or retail use had not been approved for the specific space; and that City Commission approval would be required for an additional use.

29. Because Plaintiff did not receive the City's contrary position until June 2025, he had no actual notice of the alleged bicycle-storage designation when he signed the Guaranty on March 7, 2024. Before then, CU-5 had been marketed, sold, documented, and presented as an office, and Plaintiff had no reason to believe that the specific space lacked approval for office use.

30. Plaintiff alleges bicycle storage use only materially impaired NYMH's ability to refinance CU-5 or obtain replacement financing.

31. Plaintiff alleges that inability to refinance contributed to the mortgage default and the lenders' subsequent effort to enforce Plaintiff's personal Guaranty.

32. The condominium association ultimately purchased CU-5 at a foreclosure sale on June 11, 2026 for $8,100, and a certificate of title issued to the association on June 23, 2026. Plaintiff pleads the loss of the corporate asset only as part of the causal sequence that eliminated or impaired the collateral and increased his personal Guaranty exposure.

33. Defendants dispute the City communication and rely on broader zoning and condominium materials. Plaintiff alleges the contents of the City communication and the fact of his reliance; he does not allege that the disputed municipal issue has already been finally adjudicated.

34. Plaintiff filed the original Complaint on August 29, 2025, within four years of the September 2021 closing and within months of the City communication. This Amended Complaint concerns the same transaction, conduct, representations, omissions, and professional services set out in the original Complaint and therefore relates back under Federal Rule of Civil Procedure 15(c).

35. The holders of the mortgage debt later sued Plaintiff personally to enforce the Guaranty in GTT Capital LLC, ALFA Prime Group LLC, and Ron Investments LLC v. New York Media Holdings Corp., Yury Gokhberg, et al., Broward County Circuit Court Case No. CACE-26-000601, which was temporarily removed as S.D. Fla. Case No. 0:26-cv-60599 and later remanded (the "Foreclosure/Guaranty Action").

36. The Foreclosure/Guaranty Action is not a hypothetical risk. Plaintiff is a named defendant, and the lenders seek a personal monetary judgment against him under the Guaranty. Plaintiff is pro se in that action. He has not incurred attorney's fees, but he has incurred and continues to incur

personal out-of-pocket filing, copying, postage, travel, and other litigation expenses in defending himself.

37. Plaintiff's presently claimed direct personal damages include: (a) actual municipal-record, zoning, plan, investigation, architect, inspector, professional, consultant, copying, postage, filing, travel, and mitigation expenses personally paid by him and not reimbursed, with the total still being compiled; (b) actual out-of-pocket costs personally paid in defending the Foreclosure/Guaranty Action; and (c) actual personal credit impairment, reduced borrowing capacity, or increased financing costs that have already occurred as a result of enforcement of the Guaranty and that Plaintiff proves through records, lender communications, or other competent evidence. Plaintiff further seeks any personal liability fixed by judgment or payment before final adjudication of this action, to the extent legally recoverable.

38. Plaintiff has not yet fully obtained or compiled all records necessary to quantify his credit and borrowing-related losses or all of his out-of-pocket expenses.

39. Plaintiff's direct personal injuries would remain his even if NYMH recovered nothing. Any recovery on these personal claims would compensate Plaintiff for obligations, credit or borrowing consequences, and expenses borne by him individually, not for the corporation's property, foreclosure loss, or diminution in share value.

**COUNT I**
**FRAUDULENT INDUCEMENT AND FRAUDULENT CONCEALMENT**
**(Against BH Brazil Venture LLC, Liat Toledano, and Rainer Viete)**

40. Plaintiff incorporates paragraphs 1 through 39 as if fully set forth herein.

41. During the 2021 pre-contract and pre-closing period, the Seller Defendants knew that Plaintiff was the transaction decision-maker and intended office user and that lawful office use was material to him personally.

42. Through the office-use framing of the transaction, partial disclosures, and failure to disclose the specific approved-plan designation and need for further municipal confirmation, the Seller Defendants created or permitted the false impression that CU-5 could lawfully be used as an office without further City Commission approval.

43. The concealed information was material and not obvious to Plaintiff from the face of the deed or ordinary closing documents. The Seller Defendants had superior access to the Seller's records, association information, development approvals, and transaction history, and they knew Plaintiff was proceeding under a mistaken office-use belief.

44. Liat Toledano personally participated by executing the Seller's deed and closing affidavit and by approving or participating in the Seller-side disclosures and closing. On information and belief, Rainer Viete personally approved or participated in the Seller's sale strategy and disclosures. Plaintiff does not seek to impose liability on either individual solely because of LLC membership or management status.

45. The Seller Defendants intended or expected Plaintiff to rely on the office-use premise in causing the transaction to close and in undertaking reasonably foreseeable obligations associated with retaining or financing the Property.

46. Plaintiff actually and justifiably relied before discovering the issue. Among other direct acts of reliance, he personally engaged TLO for use-related due diligence and later signed the Guaranty in March 2024.

47. As a direct and proximate result, Plaintiff suffered the independent personal injuries alleged above, including undertaking the Guaranty without knowledge of the use issue, the active enforcement of that Guaranty against him, actual impairment of his personal credit or borrowing capacity and increased financing costs to the extent proven, and actual out-of-pocket personal

expenses that he would not otherwise have incurred. The association lien, impaired refinancing, and foreclosure are alleged as intervening events in the causal sequence, not as corporate damages sought by Plaintiff.

48. The Seller Defendants' alleged concealment prevented Plaintiff from discovering the basis of the claim until the City's June 18, 2025 communication. Plaintiff timely filed the original action on August 29, 2025, and this claim relates back to that filing.

49. The alleged conduct was intentional or reckless and supports punitive damages if and to the extent authorized after the required evidentiary showing.

**COUNT II**
**FRAUDULENT MISREPRESENTATION AND CONCEALMENT**
**(Against Wolf Co. Real Estate Brokerage & Investments LLC)**

50. Plaintiff incorporates paragraphs 1 through 39 as if fully set forth herein.

51. Wolf Co., through its listing and showing personnel, marketed, presented, and showed CU-5 to Plaintiff as office space during the 2021 pre-contract and pre-closing period, including through listing materials, communications, and showings concerning the unit's intended use.

52. The office-use representation was false or materially incomplete if the City-approved plan designated the specific space as bicycle storage and further City Commission approval was required before office use.

53. Wolf Co. knew the representation was false or incomplete, acted recklessly as to its truth, or knew facts that required correction of the office-use impression. As a professional commercial real-estate brokerage, Wolf Co. had access to the Seller, association, listing history, and use-related information and knew Plaintiff was relying on its presentation of the unit.

54. Wolf Co. intended Plaintiff to rely on the office-use representation to cause the transaction to proceed and to generate a brokerage commission.

55. Plaintiff actually and justifiably relied on Wolf Co.'s representation and omission before learning of the alleged issue in June 2025, including by personally engaging TLO for use-related due diligence and later executing the March 2024 Guaranty.

56. Wolf Co.'s alleged conduct directly and proximately caused the independent personal injuries alleged above, including Plaintiff's uninformed execution of the Guaranty, the actual personal costs and borrowing consequences of its enforcement, and his out-of-pocket investigation and mitigation expenses. Plaintiff does not seek NYMH's property or foreclosure loss under this count.

57. Plaintiff timely filed the original action on August 29, 2025, and this claim relates back because it arises from the same Wolf Co. marketing, showing, and office-use representations pleaded in the original Complaint.

58. Wolf Co.'s alleged intentional or reckless conduct supports punitive damages if and to the extent authorized after the required evidentiary showing.

**COUNT III**
**PROFESSIONAL NEGLIGENCE / LEGAL MALPRACTICE**
**(Against The Law Office of Ilana Kalichman-Artzy, P.A.)**

59. Plaintiff incorporates paragraphs 1 through 39 as if fully set forth herein.

60. Plaintiff and TLO were in direct attorney-client privity. TLO's own invoice identifies Yury Gokhberg as the person for whom it undertook review of condominium documents, rules, regulations, and due-diligence material for CU-5.

61. TLO owed Plaintiff the duty to exercise the skill, care, and diligence ordinarily exercised by reasonably prudent Florida real-estate counsel undertaking due diligence for a commercial condominium intended for office use.

62. That duty included reasonably identifying the distinction between general zoning and the approved use of a specific space in a Planned Development; obtaining or recommending a municipal use or site-plan verification when lawful office use was material; and advising Plaintiff in time to avoid closing or later undertaking personal financing obligations without resolving the risk.

63. TLO breached its duty by failing to obtain or recommend the needed municipal confirmation, failing to identify and explain the alleged approved-plan issue, and failing to advise Plaintiff that the intended office use required further investigation or approval.

64. But for TLO's breach, Plaintiff would have required the use issue to be resolved before proceeding, would not have signed the March 7, 2024 Guaranty, and would not have exposed his personal credit and borrowing capacity to obligations based on the office-use premise.

65. TLO's breach directly and proximately caused Plaintiff's alleged independent personal injuries, including actual out-of-pocket investigation, professional, consultant, and mitigation expenses; actual personal costs of his pro se defense in the Foreclosure/Guaranty Action; actual credit impairment, reduced borrowing capacity, or increased financing costs to the extent proven; the present enforcement of the Guaranty against him; and any personal liability fixed before final adjudication of this action. Plaintiff does not seek the $1,200 invoice amount unless he later establishes that he personally paid it and was not reimbursed, and he does not seek attorney's fees for his pro se defense.

66. Plaintiff did not discover, and with reasonable diligence could not have discovered, TLO's alleged failure and its causal connection to his injury until the City's June 18, 2025 communication. The original Complaint was filed on August 29, 2025, within two years of discovery, and this claim relates back.

## COUNT IV
## BREACH OF FIDUCIARY DUTY - PLEADED IN THE ALTERNATIVE
## (Against The Law Office of Ilana Kalichman-Artzy, P.A.)

67. Plaintiff incorporates paragraphs 1 through 39 as if fully set forth herein.

68. By accepting Plaintiff personally as a client and undertaking use-related due diligence, TLO owed Plaintiff fiduciary duties of loyalty, candor, disclosure, and faithful performance within the scope of the representation.

69. TLO breached those duties by failing to disclose that it had not obtained municipal confirmation of the use critical to Plaintiff, failing to advise him of the unresolved risk, and failing to communicate adequately the limits of the work performed.

70. Plaintiff relied on TLO's undertaking and silence and suffered the independent personal damages alleged above.

71. This count is pleaded in the alternative to Count III and does not seek a duplicative recovery for the same injury.

## DIRECT PERSONAL DAMAGES

72. Plaintiff seeks only damages personal to him and proven to have been proximately caused by the Defendant against whom they are awarded.

73. Those damages include actual personal investigation, municipal-record, zoning, plan, architect, inspector, professional, consultant, mitigation, copying, postage, filing, travel, and pro se defense costs personally paid and not reimbursed; actual personal credit impairment, reduced borrowing capacity, and increased financing costs already incurred and proven; together with any personal Guaranty liability later fixed by judgment or payment before final adjudication of this action. The exact amount of Plaintiff's presently incurred losses is still being compiled and will be established through receipts, credit records, lender communications, discovery, and other proof.

74. Plaintiff seeks punitive damages only on the fraud counts and only if authorized by governing law and supported by the evidence.

75. Plaintiff seeks prejudgment and post-judgment interest and taxable costs. Plaintiff does not seek attorney's fees for his pro se defense in the Foreclosure/Guaranty Action or the value of his own time.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Yury Gokhberg respectfully requests that the Court enter judgment in his favor and against the appropriate Defendants and award:

A. Compensatory damages for Plaintiffs direct and independent personal injuries in an amount to be proven at trial;

B. Consequential damages consisting of actual out-of-pocket expenses personally paid in defending the third-party Foreclosure/Guaranty Action; actual impairment of Plaintiffs personal credit or borrowing capacity and increased financing costs already incurred and proven; and any personal sums later paid or adjudged under the Guaranty before final adjudication of this action, to the extent legally recoverable;

C. Reimbursement of actual personal municipal-record, zoning, plan, investigation, architect, inspector, professional, consultant, copying, postage, filing, travel, defense, and mitigation expenses personally paid and not reimbursed, in an amount proven at trial;

D. Punitive damages on the fraud counts, if and to the extent authorized;

E. Prejudgment and post-judgment interest;

F. Taxable costs; and

G. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 20, 2026

Respectfully submitted,

Yury Gokhberg
Pro Se Plaintiff
125 Oceana Drive East # ph2c,
Brooklyn, New York 11235
yury.gokhberg@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 20, 2026, I served a copy of the foregoing Amended Complaint upon all counsel and parties of record by placing the same in a sealed envelope, with first-class postage prepaid, addressed to the persons listed on the service list below, and depositing the envelopes in the United States Mail.

Service List:

Kristina Michele Bado
Steven Jeffrey Mitchel
Boyd Richards Parker & Colonnelli, P.L.
100 S.E. Second Street
Suite 2600
33131, Ste 26th Floor
Miami, FL 33131
Attorneys for Defendant
The Law Office of Ilana Kalichman-Artzy, P.A.

Joshua R Kon
Robert A. Stok
Stok Folk + Kon
One East Las Olas Boulevard
Suite 915
Fort Lauderdale, FL 33301
Attorneys for Defendants
BH Brazil Venture LLC,
Liat Toledano, Rainer Viete,
and Wolf Co. Real Estate Brokerage & Investments LLC.

Yury Gokhberg
Pro Se Plaintiff
125 Oceana Drive East # ph2c,
Brooklyn, New York 11235
yury.gokhberg@yahoo.com